The opinion of the Court -was delivered by
Riciiardson, J.
In the case before us, the master made no request of the physician ; nor were the services performed under the roof of the master, so as to raise a plain conclusion, that he required the performance of the physician’s services. The inquiry then is as follows, to wit: Does the private economical relation existing between • master and apprentice, of itself, imply an obligation, on the part of master, to pay for services rendered under such circumstances ? In his chapter of master and servant, (1 Black, Com. 426,) the commentator makes apprentices the second species of servants, of which he enumerates four, tp wit, menial servants, apprentices, laborers, and stewards, &c., which last he describes as of superior capacity. He treats of the relations between the master and any of these, as the same, generally. He notes two peculiarities respecting apprentices, as arising from general principles, to wit: that the master may correct them, and that they have no wages, (their labor and earnings going exclusively to the master during apprenticeship.) In all other duties, rights, and privileges, apprentices stand upon the footing of other servants, except as varied by express contract. (See Bae. Abridg. Master and Servants.) Indeed, as a person under lawful age could not bind himself as an apprentice, it seems to follow, that we must look to the exPress contract or ^statutory regulations for any peculiar consequences arising out of his relation with his master. Blackstone concludes his doctrine of master and servant with this remark, “we may observe, that in all the cases here put, the master may be frequently a loser by the trust reposed in his servant, but never can be a gainer.” This remark .applies emphatically to the relation of master and apprentice. The former has much to lose, the latter much to gain. It has been determined, in this State, that the master cannot sue the apprentice on his indentures; (M'Knight v. Hogg,[1] Constitutional Court, May, 1812; see 1 Brev. Dig. 25;) whereas, in Douglas v. Strong,[2] A. D. 1817, at Charleston, the master was held liable to the apprentice for breach of the indenture on his part- Does it follow, that the apprentice is forlorn or poor ? On the contrary, he may be, and is often, richer than his *275 master. It is equally an error to suppose, that the relation is analogous to that parent and child. On the contrary, it is a mere civil contract to serve, upon condition of being taught the trade and art of the master ; and the contract may be infinitely varied by the parties. If the master' were liable for services rendered to the apprentice without request, he would frequently be made liable when he would not have had a physician sent for to his own family. Such liability with the possibility of long chronic diseases, would entirely deter men from taking apprentices ; unless with large premiums, or under great advantages. This would be destructive of the great and general advancement of trades, by the frequent opportunities of binding out poor apprentices. These must make a present sacrifice for a future permanent good ; and, as is observed by Justice Rooke, in the well-considered case of Wennall v. Adney, 3 Bos. & Pul. 246, “it must be left to the humanity of every master to decide whether he will assist his servant, according to his capacity, or not ” In that case it was unanimously decided, that the obligation of the master, if any, to provide medical assistance for his servant, must arise *from contract, not from implication ; and it is observed in that case, that there is no decision to the contrary, to be found, but in some Nisi Prius cases, p. 254. In the questionable one alluded to by the judges, (Scarman v. Castell, 1 Esp. N. P. C. 270,) it is to be remarked, that Lord Kenyon confines the liability of the master to cases where the servant remained under the roof of his master. In Newby v. Wiltshire, 2 Esp. N. P. C. 739, the decision of Lord Mansfield .is against the liability of the master directly; though he humanely observed, that a master ought to take care of his servant in sickness. The case from 1 Strange, 99, and that from Bulstrode, part II, p. 332, have very little application to the point before us. It was not the point before the Court in either of those cases. The case of Wennall v. Adney, and that of Newby v. Wiltshire, stand, then, without opposition among the English cases, and are well supported by the American ease of Dunbar v. Williams, 10 John., 249, where it is decided, that no action lies for attendance on a slave, without request, unless the case was so urgent as to prevent previous application to the master ; which is, surely, aJ stronger case of implied liability. Weighing, then, the question by the authority of past adjudications, as well as by the doctrine of master and servant, there appears little room for doubt.
And as there is nothing in our Acts or Statutes which can affect the case, let us see if there is any thing in the indenture which can do so. This is in the usual printed form, and evidently taken from the common English precedent, used where masters are compelled by statutory regulation to take apprentices. By this indenture, masters are required to instruct the apprentice, and to find .sufficient meat, drink, apparel, washing, lodging, and all other things needful for an apprentice, &c. &c. Upon which precedent, Burn, 1 vol. 116, tit. Apprentice, observes, that “where the overseers and master can agree, other covenants may be inserted, according to such agreement; but if the master is to be compelled, it seemeth not safe to require* more from him by the indenture, than is above expressed.” Now it would be unjust indeed, if a master who is compelled in England against his own will to take an apprentice, were obliged also to have him cured of all disease with which he might be long *276 afflicted. Great impositions might and would follow such a rule; masters would become over cautious and suspicious, to the injury both of trade and of poor children. In the words of Justice Rooke, 3 B. & P. 253, “The contract, on the part of the servant, is merely to serve ; but, on the part of the master, it is varied by numberless stipulations, according to the inclinations of contracting parties.” We must .then construe his covenant by the usual rule applied to the duties specifically enumerated, to wit, “expressio unius est exclusio ulterius.” Those which he has undertaken, he must perform, but if so disposed, he may confine himself to them alone. In the present instance, the law, for the common good, leaves the rest to the master’s moral sense.
The motion is therefore dismissed, and the order of the presiding judge affirmed.
Colcock, Nott, Cheves and Johnson, JJ., concurred.

 3 Brev. 44; 1 Tread. 117.

 MSS.